*14*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN CARPENTER,
    Plaintiff

vs.

Case No..: 2:11-cv-10304-GCS-MAR

Hon.: George Caram Steeh

CITY OF FLINT, JACKIE POPLAR,
individually and in her capacity as
City Council President and
DAYNE WALLING, individually

    Defendants

FILED 2011 MAY 20 A 9 02
U.S. DIST. COURT CLERK
EAST DIST. MICH
FLINT

PROOF OF SERVICE
*I served this document by mailing it and/or electronically serving a copy of same to the Attorneys of Record for each named party in the case (shown on the caption) on 4/20/2011*
*I declare that the statements above are true to the best of my knowledge, information and belief ///(s)/*

| | |
|---|---|
| F. Anthony Lubkin (P32740)<br>Attorney for Plaintiff<br>4844 Apache Path<br>Owosso, MI 48867<br>(248) 496 5222 | Thomas L. Kent (P55863)<br>Attorney for Dayne Walling<br>1101 S. Saginaw St., 3rd Floor<br>Flint, MI 48502<br>(810) 766 7146 |
| Peter M. Bade (P47546)<br>Attorney for City of Flint<br>1101 S. Saginaw St., 3rd Floor<br>Flint, MI 48502<br>(810) 766 7146 | Michael Gildner (P49732)<br>Attorney for Jackie Poplar<br>Simen, Figura and Parker PLC<br>5206 Gateway Center, Suite 200<br>Flint, MI 48507<br>(810) 235-9000 |

## AMENDED COMPLAINT FOLLOWING STIPULATION

**NOW COMES Plaintiff, JOHN CARPENTER,** by and through Attorney F. Anthony Lubkin, and for his Amended Complaint in the above captioned matter, states as follows:

1. Plaintiff JOHN CARPENTER (hereafter "Plaintiff") is a resident of the City of Flint, County of Genesee, in the State of Michigan.

2. Defendant CITY is a municipal entity located in Genesee County, State of Michigan

3. Defendants JACKIE POPLAR and DAYNE WALLING are residents of the City of Flint, Genesee County, in the State of Michigan.

4. The amount in controversy exceeds One Hundred Thousand Dollars ($ 100,000) and includes questions of law under the United States Constitution and federal laws, as well as laws of the State of Michigan.

5. During December, 2006, Defendant, acting through then-Mayor Don Williamson, was named Plaintiff to work in his capacity as Director of Transportation. Plaintiff's appointment was subsequently approved by Flint City Council by a 8-to-1 vote.

6. Plaintiff's performance in his position was superb, far more than merely adequate, and all performance reviews showed work which was satisfactory in every way.

7. Plaintiff continued to perform in the same capacity after the departure of Mayor Don Williamson, through the temporary Administration of Mike Brown, and the advent of the Administration of current Mayor Dayne Walling in calendar 2009.

8. For reasons unknown to Plaintiff, in September, 2009, at the time that the current Mayor, Defendant DAYNE WALLING was newly settled into office, the Defendant's City's personnel operatives, acting at the behest of Defendant DAYNE WALLING sent notice of Defendants' decision to discharge Plaintiff, effective September 4, 2009 the date of that initial notice (copy attached as Exhibit A hereto) to a relative of Plaintiff, but not to Plaintiff personally. The reasons and basis for the purported discharge were neither announced nor explained.

9. Plaintiff never received the written notice of Defendant's decision to discharge him and having never been advised of same, continued to report for duty and serve in his appointed position for an extended period of weeks during the Autumn of 2009, with no objection or protest by Defendant City operatives as to his continued service.

10. Plaintiff continued to serve, even after receiving word that the purported termination letter had been sent, and having discovered that it was sent to an erroneous address, while Plaintiff awaited word as to whether termination of his appointed position with the City would be approved by City Council, pursuant to City Charter.

11. Plaintiff received word that City Council had been presented with proposed discharge not only his own employment but also that of other individuals who had been serving as director of various executive departments under the previous Mayor, and that City Council had approved the other discharges, but not that of Plaintiff.

12. Neither Plaintiff nor City Council ever received any explanation of why Defendant had seen fit to discharge Plaintiff, other than by inference from the fact that Plaintiff was appointed by, and politically oriented with, the previous Mayor Don Williamson.

13. After the Administration of Defendant DAYNE WALLING discovered that his predecessor administrator, Michael Brown had illegally hired one Tom McCabe to "share" Plaintiff's job duties, without City Council approval (let alone without proper proof of this person's credentials or training in the fields where he would purport to share such duties with Plaintiff), Defendants City and DAYNE WALLING scrambled to contrive the same result through other means, specifically, the outright dismantling of his position, and creation in its place of fragmentary positions which purported to absorb all of the functions previously performed by Plaintiff when the position, which had existed for decades in the configuration which prevailed during Plaintiff's tenure, was still intact.

14. The fact that the contrivance first noted in Paragraph 13, above and set forth in more detail in Paragraph 17, below was an improper pretext and/or artifice designed solely and specifically to circumvent rules requiring City Council approval for appointment of City officials was later made manifest when Defendant JACKIE POPLAR publicly promoted a favored candidate of her own for the fully reconstituted position of City Transportation Director that Plaintiff had held, during which promotion made public and derogatory remarks of and concerning Plaintiff (set Paragraph 17, below).

15. The fact that the mechanism used by Defendants to contrive a temporary, fragmented position to remove Plaintiff was a pretext to wrongfully discharge him and circumvent City Charter requirements of a City Council vote, and not a good faith exercise of an Administration's power to reorganize, was manifest in the facts that

    (a) the replacement, with whom Plaintiff was initially to "share" responsibility lacked proper credentials for the duties he was undertaking, contravening the *City Charter Section 4-301C,*

    (b) the replacement was appointed without required approval of City Council, as required under *City Charter Section 4-203C;*

    (c) the subsequent discharge of Plaintiff was effectuated entirely based upon his political orientation towards the previous Mayor Don Williamson and for no other expressed reason or basis, again in violation *City Charter Section 4-301D,*

    (d) numerous, subsequent statements issued by Defendants representing both the legislative and executive branches of City government, namely Defendants JACKIE POPLAR and DAYNE WALLING, in their official and individual capacities, publicly derogating Plaintiff and his credentials (see details below), manifesting malicious motive to break established protocols of city employment and the requirements of *City Charter Section 4-203A* regarding maintenance of the integrity of City Departments, including that of Transportation, all in order to fabricate pretexts to undermine rights and expectancies of Plaintiff.

16. While discharge of other officials sacked in the change of Administrations during calendar 2009 was approved by City Council, that of Plaintiff was voted down,

yet in defiance of the manifest desire of City Council not to terminate Plaintiff in his well established position, Defendant CITY plowed ahead with schemes to artificially dismantle his long-established position, and fragment its functions to other positions, even though Defendant JACKIE POPLAR would later proposed to reconstitute the same position which Plaintiff had held, to favor her own choice of candidates.

17. Defendant CITY's actions violated the mandates of said City's own Charter, to wit:

   (a) forbidding removal by the Ciy Administrator serving in the capacity of Temporary Mayor of Mayoral appointees without City Council approval, *City Charter Section 2-411C,;* by removing Plaintiff without Council approval;

   (b) forbidding discrimination on the basis of an employee's "political orientation", *City Charter, Section 4-301D;,* by removing Plaintiff solely based upon this illicit factor and/or the other illicit factor cited immediately below, namely his age,

   (c) forbidding discrimination on the basis of an employee's "age", *City Charter, Section 4-301D;,* by removing Plaintiff solely based upon this illicit factor and/or the other illicit factor cited immediately above, namely, his political orientation,,

   (d) requiring that "all appointments and promotions in the City of Flint shall be based on merit and fitness", *City Charter Section 4-301C,* by appointing persons(s) to replace Plaintiff (as described below) with persons objectively lacking training to serve in the position(s) created from Plaintiff's post as Department head, as set forth in more detail in the immediately following sub-paragraph 17(e);

   (e) mandating the integrity of executive departments, including the Department of "Transportation" be maintained, *City Charter Section 4-203A,* which requirement Defendant City violated through use of the following scheme/artifice contrived as a pretext to facilitate and/or conceal its improper actions as set forth in the above four sub-paragraphs 17(a) through 17(d), above, to wit:

      (i) in late 2009, carving from Plaintiff's established post two fragmentary, interim positions to be staffed by person to serve as Plaintiff's interim "replacements", instead of maintaining integrity of the established executive department for "transportation" mandated by *City Charter Section 4-203A;*

      (ii) again in late 2009. appointing each of the new, fragmentary positions which it had artificially and improperly (in violation of *City Charter Section 4-203 A)* carved from Plaintiff's original post with persons (to be named) who were objectively lacking in competence, experience, training and credentials to perform the functions which had previously been performed by Plaintiff, in violation of *City Charter 4-301C;* only to

      (iii) again arbitrarily reverse course in late 2010 by announcing plans to abruptly reconstitute the non-fragmented position, head of Transportation Department

previously held by Plaintiff, this time for the sole purpose of staffing the reconstituted position with a proposed appointee expressly favored and actively touted by co-Defendant JACKIE POPLAR for her own personal reasons, not disclosed publicly and/or to the City Attorney as required by *City Charter Section 1-604* mandating full disclosure by any elective officer including said Defendant JACKIE POPLAR of the true nature of any conflict between her personal interest and the public interest as defined by law

18. Plaintiff's replacement(s), though far less competent than Plaintiff to perform the functions delegated to that replacement from Plaintiff's former position, were much younger than Plaintiff, and harbored political orientation differing from Plaintiff's.

19. Late in Plaintiff's tenure with the City, while City officials were manifesting dismay at Council's expressed disapproval of the proposed termination of Plaintiff, City operatives and employees of Defendant made derogatory remarks to, in the presence of or in the hearing of Plaintiff, to the effect that he was part of an "old school" or "old order" which had to be replaced with someone "new", or a "new approach".

20. Defendant proceeded to finalize Plaintiff's termination, in continued defiance of the City Charter and City Council, even though the sole apparent bases and motivations for this action were Plaintiff's political orientation and his relative age.

21. Had Defendant not terminated Plaintiff on the basis of illicit discrimination, in violation of the City Charter, Michigan and U.S. civil rights legislation and the US and Michigan Constitutions, Plaintiff would have served in the same capacity for a period of at least three additional years before retiring from his post.

22. The next year, in calendar 2010, Plaintiff became affiliated an organization known as FLINT AREA CHAMBER OF COMMERCE, which competes directly with other local and regional area Chambers of Commerce, which consistently enjoy tangible political support from Defendants, including frequent grants approved by City administrators and/or City Council to one such competing entity known as the Genesee Regional Chamber of Commerce, not named as a Defendant herein..

23. During summer, 2010, when Plaintiff's disaffection with City Administration policies and his affiliation with FLINT CHAMBER of COMMERCE became known to Defendants, the latter began a studied campaign of derogation and defamatory conduct regarding Plaintiff, as set forth in Paragraphs 24 to 28, below.

24. On or about August 1, 2010, Defendant DAYNE WALLING, acting specifically an solely in his individual capacity, in a communication made by e-mail to numerous political supporters and media selected by him, and in specific response to televised media reports describing activities of named dissidents (including Plaintiff) who then favored said Defendant's recall as Mayor of Flint, declared in his published remarks that the entire "crew" of recall supporters, including Plaintiff were nothing more than criminals, specifying the crime of "forgery", thereby wrongly ascribing

criminal conduct to Plaintiff. The statement was false, derogatory, of and concerning Plaintiff specifically (among others) who had been depicted in the telecasts, to which Defendant DAYNE WALLING was responding specifically at the time of comment, and known by said Defendant at the time of the utterance to have been false.

25. Written demands for a retraction regarding Mr. Carpenter specifically were not forthcoming, even though a supposed clarification was issued as to others.

26. Defendants' relentless campaign against Plaintiff's interests continued through Autumn, 2010, as Defendant City systematically took aim at the prospects of FLINT AREA CHAMBER OF COMMERCE, with whom Plaintiff was newly affiliated; Defendant City threatened to demoted and/or discharge at least two major officials from its operations, one Larry Ford and one Jerry Preston expressly because of said officials' prospective memberships with said Chamber in doing so, derogatory statements regarding Plaintiff personally, were then issued by City officials, details as documented by memo or forthcoming Affidavits; separate litigation by one or both of the above named officials for their own improper discharges at the hands of Defendant City is also pending, though not in any way consolidated with the present matter involving this Plaintiff.

27. On December 8, 2010 at a City Council Finance Committee Meeting, and again on December 13, 2010 at a regular open City Council meeting telecast on the local cable government access channel, Defendant JACKIE POPLAR launched once more into defamatory conduct, acting both in her capacity as City Council President, and individually, in promoting a certain favored candidate, one Kay Mohamed for a position which said Defendant JACKIE POPLAR, then described as being the City's Director of Transportation, thereby confirming Defendant City's pretextual scheme of reconstituting the position once held by Plaintiff as set forth in Paragraph 17, above (and thereby manifesting clearly that its erstwhile fragmentation during the Brown Administration had been a pretext, to effectuate wrongful termination):

   a) Defendant JACKIE POPLAR, flouting the objective standards of decorum and civility recited at the outset of every City Council meeting never to defame, inflame or wrongly blame others in making speeches before the Council, began a diatribe falsely derogating Plaintiff's character, credentials and experience, comparing those of Plaintiff falsely/unfavorably to those of her own candidate's education and training to that of Mr. Carpenter, indicating her favored candidate "came with papers", as somehow contrasted with Mr. Carpenter, whom she falsely described as having received his degree(s) and/or credentials in what she described as a "Bazooka bubble gum wrapper."

   b) The foregoing false, published comments of Defendant JACKIE POPLAR were aired and broadcast through media coverage of City Council proceedings, despite the fact that Plaintiff Carpenter not only has formal education and training which would dwarf any that has been associated with either said Defendant or her favored candidate, Ms. Mohamed, or the fact that Plaintiff also has extensive

certification by State agencies and trade associations in specialized areas of designation involving roads, property rights and transportation, in contrast to Ms. Mohamed, or his earlier purported replacement Tom McCabe.

    c) Defendant JACKIE POPLAR added an equally false and insulting remark that her touted candidate, Ms. Mohamed did "all" of the work which was done by Mr. Carpenter during the latter's recent tenure, and that Mohamed personally trained both Mr. Carpenter and Plaintiff's colleague Bill Ayre. These comments were both objectively false and derogatory against Mr. Carpenter and his professional contribution and integrity. Defendant JACKIE POPLAR made these comments deliberately and repeatedly, mentioning Plaintiff personally, by name.

28. Defendant JACKIE POPLAR's published remarks about Plaintiff made during December, 2010 were false, derogatory, clearly of and concerning Mr. Carpenter personally, and thus blatantly slanderous and (to the extent they may have been preserved in tangible media) libelous, and known by said Defendant to have been false when made and broadcast by her.

29. Defendant JACKIE POPLAR's published remarkes about Plaintiff, by impugning his professional credentials were hence defamation *per se*. They also were broadcast to a large audience and placed Plaintiff Carpenter in a false negative light

30 As a result of Defendants' combined actions herein, Plaintiff has suffered damages in excess of ONE MILLION DOLLARS ($ 1,000,000.00), as set forth with particularity under each Count set forth herein.

## COUNT I – BREACH OF CONTRACT

### AGAINST CITY OF FLINT ONLY

31. The allegations of Paragraphs 1 through 30 are incorporated by reference as if repeated in their entirety herein.

32. Having entered into a contract for employment with Plaintiff, and having abrogated same, not only without cognizable cause, but on the basis of improper reasons which violate the City Charter and other legislation referenced herein, Defendant CITY is in breach of contract, which has proximately caused Plaintiff to suffer damages in excess of FOUR HUNDRED THOUSAND DOLLARS ($ 400,000) for which said Defendant should now be accountable at law.

WHEREFORE, Plaintiff prays that this Honorable Court enter its Judgment for Plaintiff in an amount exceeding FOUR HUNDRED THOUSAND DOLLARS ($ 400,000), against Defendant CITY plus costs and fees incurred in having to bring this action, plus such other and further relief as this Court deems proper at law.

## COUNT II

### AGE DISCRIMINATION VIOLATING FEDERAL LAW
### AGAINST CITY OF FLINT ONLY

33. The allegations of Paragraphs 1 through 32 are incorporated by reference as if repeated in their entirety herein.

34. Defendant CITY treated Plaintiff more harshly during the course of Plaintiff's employment than it did its younger employees, and Defendant CITY thereafter used illicit pretext(s) to contrive a discharged of Plaintiff at least in part, based on his age.

35. After Plaintiff lost his employment, the replacement which Defendant called upon to to perform most of his job duties in his stead was younger than Plaintiff.

36. The resort to a younger replacement for Plaintiff was pretextual, in furtherance of Defendant CITY's scheme to discriminate against Plaintiff on the basis of age, especially in light of the replacement's grossly inferior credentials and training, and contrived manner in which Plaintiff's duties were delegated to that replacement.

37. Accordingly, Defendant CITY violated 42USC 2000(e) et seq., by discriminating against Plaintiff because of his age.

WHEREFORE, Plaintiff seeks judgment against Defendant CITY for economic damages in an amount in excess of FOUR HUNDRED THOUSAND DOLLARS ($ 400,000), plus other non-economic damages, as the jury may deem just, together with punitive damages in light of Defendant's willful and wrongful misconduct herein, along with costs, interest and attorney fees pursuant to statute, and such other and further relief as this Court deems appropriate at law and in equity.

## COUNT III

### AGE DISCRIMINATION IN VIOLATION OF MICHIGAN LAW
### AGAINST DEFENDANT CITY OF FLINT ONLY

38. The allegations of Paragraphs 1 through 37 are incorporated by reference as if repeated in their entirety herein.

39. Defendant CITY treated Plaintiff more harshly during the course of Plaintiff's employment than it did its younger employees, and Defendant CITY thereafter used illicit pretext(s) to contrive a discharged of Plaintiff at least in part, based on his age.

40. Defendant CITY discharged Plaintiff in substantial part because of his age.

41. After Plaintiff lost his employment, the person(s) selected by Defendant CITY to perform Plaintiff's job duties in his stead was/were less competent, less experienced in performance of job duties, but who was/were younger than Plaintiff.

42. The resort to younger replacements for Plaintiff was pretextual, in furtherance of Defendant CITY's scheme to discriminate against Plaintiff on the basis of age, especially in light of the replacement's inferior credentials and training, and contrived manner in which Plaintiff's duties were delegated to that replacement.

43. Accordingly, Defendant CITY violated the Michigan Elliot-Larsen Civil Rights Act, by discriminating against Plaintiff because of his age.

WHEREFORE, Plaintiff seeks judgment against Defendant CITY for economic damages in an amount exceeding FOUR HUNDRED THOUSAND DOLLARS ($ 400,000), plus other non-economic damages, as the jury may deem just, together with punitive damages in light of Defendant CITY's willful and wrongful misconduct herein, along with costs, interest and attorney fees pursuant to statute, and such other and further relief as this Court deems appropriate at law and in equity.

## COUNT IV

### WRONGFUL DISCHARGE IN VIOLATION OF CITY CHARTER AGAINST ALL DEFENDANTS

44. The allegations of Paragraphs 1 through 43 are incorporated by reference as if repeated in their entirety herein.

45. The actions of Defendants CITY, DAYNE WALLING and JACKIE POPLAR in effectuating discharge of Plaintiff, as described above constituted a wrongful discharge of Plaintiff, whether or not motivated solely, partially or incidentally by wrongful age discrimination as alleged in Counts II and III, above, constitutes wrongful discharge under the Flint City Charter, whose Section 4-301 forbids discrimination against city employees, not only because of age, but also because of "political orientation", and which requires that "all" appointments including that of replacement be based solely "on merit and fitness", Sec 4-301-c, thereby prohibiting not only Plaintiff's discharge based on illicit factors of "age" and/or "political orientation" but also said Defendants' scheme to install non-competent person(s) selected as Plaintiff's replacement(s), thereby effectuating a wrongful discharge under the City Charter, for which said Defendants must be held accountable at law.

WHEREFORE, Plaintiff seeks judgment against Defendants CITY, DAYNE WALLING and JACKIE POPLAR for economic damages in the amount of FOUR HUNDRED THOUSAND DOLLARS ($ 400,000), plus other non-economic damages, as the jury may deem just, together with punitive damages in light of said Defendants' willful and

wrongful misconduct herein, along with costs, interest and attorney fees pursuant to statute, and such other relief as this Court deems appropriate at law and in equity.

## COUNT V

### DEPRIVATION OF CONSTITUTIONALLY PROTECTED DUE PROCESS LIBERTY INTERESTS AGAINST ALL DEFENDANTS

46. The allegations of Paragraphs 1 through 45 are incorporated by reference as if repeated herein in their entirety

47. Having wrongfully taken Plaintiffs' Constitutionally-protected liberty interests in both in the pursuit of his career and in his exercise of political affiliations and orientation supporting former Mayor Williamson, and of many other aspects of Plaintiff's free speech and association, all in defiance of the City Charter, which created the expectancy that such factors would not be used to abrogate employment or career, and thereby contravening Plaintiffs' rights to substantive and/or procedural due process in the pursuit of that career, Defendants CITY and JACKIE POPLAR acted under color of state law or action in such a manner as to undermine and/or abrogate these Constitutional rights, resulting in damage to Plaintiff's reputation and career in excess of SIX HUNDRED THOUSAND DOLLARS ($ 600,000), for which each must each now be held jointly and severally liable for said amount as a matter of Constitutional Law.

WHEREFORE, Plaintiffs pray that this Honorable Court enter its Order awarding damages against Defendants CITY, DAYNE WALLING and JACKIE POPLAR, jointly and severally, and in favor of each of the Plaintiffs in an amount exceeding Six Hundred Thousand Dollars ($600,000) plus costs and attorney fees incurred in having to bring this action, plus punitive or exemplary damages for the brazen, extreme, gratuitous and remorseless manner in which the above-named Defendants cavalierly abridged Plaintiffs' Constitutionally protected liberty interests on a repeated basis, plus such other and further relief as this Court deems proper at law.

## COUNT VI

### DEPRIVATION OF CONSTITUTIONALLY PROTECTED DUE PROCESS PROPERTY INTERESTS AGAINST ALL DEFENDANTS

48. The allegations of Paragraphs 1 through 47 are incorporated by reference as if repeated herein in their entirety

49. Having wrongfully taken Plaintiffs' Constitutionally-protected property interests in

both in the pursuit of his career and in his exercise of political affiliations and orientation supporting and respecting the former Mayor, and other aspects of Plaintiff's free speech and association, all in defiance of the City Charter, which created the expectancy that such factors would not be used to abrogate employment or career, and thereby contravening Plaintiffs' rights to substantive and/or procedural due process in maintenance of that employment, Defendants CITY, DAYNE WALLING and JACKIE POPLAR acted under color of state law, in such a manner as to undermine and/or abrogate these Constitutional rights, resulting in damage to Plaintiff in excess of Four Hundred Thousand Dollars ($ 400,000), for which each must each now be held jointly and severally liable for said amount as a matter of Constitutional Law.

WHEREFORE, Plaintiffs pray that this Honorable Court enter its Order awarding damages against each of the above-mentioned Defendants, jointly and severally, and in favor of each of the Plaintiffs in an amount exceeding Four Hundred Thousand Dollars ($400,000) plus costs and attorney fees incurred in having to bring this action, plus punitive or exemplary damages for the brazen, extreme, gratuitous and remorseless manner in which the above-named Defendants cavalierly abridged Plaintiffs' Constitutionally protected liberty interests on a repeated basis, plus such other and further relief as this Court deems proper at law.

## COUNT VII

### GROSS NEGLIGENCE PER SE
### (NON-IMMUNE ACTS IN VIOLATION OF CITY CHARTER)
### AGAINST ALL DEFENDANTS

50. The allegations of Paragraphs 1 through 49 are incorporated by reference as if repeated herein in their entirety

51. Having had a duty to Plaintiff to use due care in the handling of his workplace and in the administration of procedures designed to protect the rights of City employees, and having brazenly abrogated and breached that duty, acting in numerous ways in defiance of the express mandates of the City's own Charter, not to mention other statutory and Constitutional mandates addressed herein, and having done so without excuse or justification in a manner which was not only negligent per se (having been in violation of express law and/or ordinance) but indeed, grossly negligent per se and hence devoid of entitlement to immunity, Defendants have proximately caused Plaintiff to incur damages in an amount exceeding SIX HUNDRED THOUSAND DOLLARS ($ 600,000) for which Defendants should now be held accountable at law.

WHEREFORE, Plaintiffs pray that this Honorable Court enter its Order awarding damages against each of the above-mentioned Defendants, jointly and severally, and in favor of each of the Plaintiffs in an amount exceeding Six Hundred Thousand Dollars

($ 600,000), plus costs and attorney fees incurred in having to bring this action, plus punitive or exemplary damages for the brazen, extreme, gratuitous and remorseless manner in which the above-named Defendants acted in such a grossly negligent manner in the handling of its affairs with respect to Plaintiff's workplace and employment, plus such other and further relief as this Court deems proper at law.

## COUNT VIII

### DEFAMATION – SLANDER/LIBEL PER SE AGAINST DEFENDANT JACKIE POPLAR IN HER OFFICIAL AND INDIVIDUAL CAPACITY, AND AGAINST DEFENDANT DAYNE WALLING SOLELY IN HIS INDIVDUAL CAPACITY

52. The allegations of Paragraphs 1 through 51 are incorporated by reference as if repeated herein in their entirety

53. Having made false, derogatory comments of and concerning Plaintiff, and having done so with knowledge of their falsity and/or reckless disregard as to their falsity, especially with the means to verify their falsity through filed vitae at his/her disposal, impugning Plaintiff's full professional contribution and all professional credentials, and having made said comments publicly in open meetings and in and to various media, Defendant DAYNE WALLING, acting individually for political purposes and not in the exercise of any City policy or mandate, and therefore disconnected from any prospective immunity, and Defendant JACKIE POPLAR, acting both officially in her capacity as Council President and individually (in the personal promotion of a prospective candidate who was a personal friend), committed actionable defamation per se, doing so with legally cognizable malice, for which special damages need not even be proven, but for which each said Defendant must now be held accountable at law.

WHEREFORE, Plaintiffs pray that this Honorable Court enter its Order awarding damages against each of the above-mentioned Defendants, jointly and severally, and in favor of each of the Plaintiffs in an amount exceeding Six Hundred Thousand Dollars ($ 600,000), plus costs and attorney fees incurred in having to bring this action, plus punitive or exemplary damages for the brazen, extreme, malicious and remorseless manner in which the above-named Defendants acted in defaming Plaintiff per se, plus such other and further relief as this Court deems proper at law.

## COUNT IX

### INVASION OF PRIVACY – "FALSE LIGHT" AGAINST DEFENDANT JACKIE POPLAR IN HER OFFICIAL AND INDIVIDUAL CAPACITY, AND AGAINST DEFENDANT DAYNE WALLING SOLELY IN HIS INDIVDUAL CAPACITY

54. The allegations of Paragraphs 1 through 53 are incorporated by reference as if repeated herein in their entirety

55. Having made false, derogatory comments of and concerning Plaintiff, and having done so with knowledge of their falsity and/or reckless disregard as to their falsity, especially with the means to verify their falsity through filed vitae at her disposal, impugning Plaintiff's full professional contribution and all professional credentials, and having made said comments publicly in open meetings and in and to various media, Defendant DAYNE WALLING, acting individually for political purposes and not in the exercise of any City policy or mandate, and therefore disconnected from any prospective immunity, and Defendant JACKIE POPLAR, acting both officially in her capacity as Council President and individually (in the personal promotion of a prospective candidate who was a personal friend), invaded the privacy of Plaintiff by placing him in a false negative light before a large local audience of those present at Council meetings and those viewing their telecast, thereby committing actionable invasions of privacy, causing Plaintiff to suffer damages to his reputation and career in excess of SIX HUNDRED THOUSAND DOLLARS ($ 600,000.), for which each said Defendant must now be held accountable at law.

WHEREFORE, Plaintiffs pray that this Honorable Court enter its Order awarding damages against each of the above-mentioned Defendants, jointly and severally, and in favor of each of the Plaintiffs in an amount exceeding Six Hundred Thousand Dollars ($ 600,000), plus costs and attorney fees incurred in having to bring this action, plus punitive or exemplary damages for the brazen, extreme, malicious and remorseless manner in which the above-named Defendants acted to invade Plaintiff's privacy, plus such other and further relief as this Court deems proper at law.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial in this case, pursuant to MCR 2.508(B)

\

Respectfully submitted,

Dated: April 20, 2011

/(s)/
F. ANTHONY LUBKIN (P32740)
Attorney for Plaintiff
4844 Apache Path
Owosso, MI 48867
(248) 496 5222

**F. Anthony Lubkin**
Attorney at Law
4844 Apache Path
Owosso, MI 48867
(248) 496-5222

Clerk of the Court                                                May 19, 2011
United States District Court
Eastern District of Michigan
Flint, MI 48503



Re: Case No. 2:11cv-10304-GCS-MAR Amended Complaint, ECF glitches

Dear Clerk of Court:

    Attached please find original and copies of Amended Complaint which had been subject of stipulation dated March 21, 2011 setting a thirty day timeline for filing (which made April 20, 2011 the target date for filing). Undersigned was only trained and certified last month (April, 2011) as an ECF filer, and apparently, to the dismay of all parties concerned, this filing was not successfully logged into the system at that time. It came to the attention of undersigned that this was the case when the time for response was elapsing and opposing counsel indicated that this was never posted or processed electronically as intended last month.

    Accordingly, in order to expedite the processing of this critical document without concern for further delays arising from glitches in undersigned's electronic filing, these documents are being manually filed, for conversion to electronic process through the Court's usual protocols and processes, so that all parties can receive the usual electronic notice and so that the case can go forward. Undersigned will thereafter humbly turn to your Court's Help Desk for further guidance and tutelage as to the electronic posting of documents, so that such mishaps and lapses do not recur. Hard copies will also be forwarded by mail to opposing parties, as an extra precaution to ensure notice of this document's filing, for the convenience of all parties concerned. Undersigned will also advise the Judge of these developments, as may be necessary.

    Thank you once more for your indulgence and understanding.

                                                            Sincerely,

cc: file